USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/21/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

-v-

CORY HEYWARD and MIGUEL ROMERO,

                      Defendants.

------------------------------------------------------------X

15 Cr. 445 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves post-trial motions by a defendant convicted of offenses arising out of his participation in a Bronx gang known as "18 Park."

On November 21, 2016, defendants Raheem Amarizan, Cory Heyward, and Miguel Romero were each convicted, after a three-week jury trial, of conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d), narcotics conspiracy in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A)–(D), and the use of firearms in connection with the racketeering conspiracy in violation of 18 U.S.C. § 924(c)(1)(A)(iii). On May 1, 2017, Heyward moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, or, in the alternative, for a new trial under Federal Rule of Criminal Procedure 33. These motions were based on two pieces of information the Government learned of and disclosed to the defense after trial—one relating to the credibility of a trial witness, Dontay Mabry, and another relating to a hearsay statement attributed to a co-defendant, Jonathan Rodriguez, who had then been scheduled for a later trial. Dkt. 747 ("D. Mem."). The Government opposed Heyward's motion. Dkt. 780 ("G. Mem."). The Court has deferred sentencing pending resolution of Heyward's motions.

For the reasons that follow, the Court denies Heyward's motions.[1]

I. **Background**

   A. **The Indictment and Trial**

On December 7, 2015, a grand jury returned a superseding indictment against Heyward and 25 others, alleging participation in a Bronx gang called "18 Park" which was alleged to have participated in violent acts and narcotics dealing in and around a South Bronx housing project, the Patterson Houses. *See* S2 15 Cr. 445 (PAE) (Dkt. 12).

On October 31, 2016, Heyward, Amarizan, and Romero went to trial on superseding indictment S6 15 Cr. 445 (PAE) (Dkt. 348), which charged each with the three counts described above.[2] The Government's trial witnesses included five cooperating witnesses who, pursuant to plea agreements, each testified to their participation in 18 Park and the participation of one or more of the three defendants; law enforcement witnesses; and lay witnesses. Of the five cooperating witnesses, four (Diquinn Lacend, Kenneth Jenkins, Keith Ruiz, and Dontay Mabry) specifically implicated Heyward in activities of the gang. The Government's physical evidence included firearms, knives, narcotics, tape-recordings of narcotics transactions, and social media communications (including videos) among members of the gang. As to the defense case, two

---

[1] Counsel for Romero informally advised the Court's staff that Romero intended to join Heyward's motion, but he did not do so. Nevertheless, the Court independently considered whether the arguments made on Heyward's behalf, when applied to Romero, would justify entry of judgment of acquittal or a new trial as to Romero. They would not. As to defendant Amarizan, following trial, Amarizan entered into a cooperation agreement with the Government, pursuant to which he affirmed, in court, his guilt on the charges on which he had been convicted.

[2] At the time of the Heyward/Amarizan/Romero trial, two other trials of 18 Park defendants were scheduled. Ultimately, only one other 18 Park defendant, William Knox, went to trial; all others pled guilty. On March 8, 2017, a jury returned a verdict of guilty against Knox on racketeering conspiracy and firearms charges, and a verdict of not guilty on narcotics conspiracy charges. *See* Dkt. 677.

2

defendants, Heyward and Romero, testified in their defense, and, as relevant here, Heyward called one character witness, a longtime friend named Andre Reed.

On November 21, 2016, the jury found all three defendants guilty of all charges. The jury's verdict also made factual findings relevant to sentencing. On the racketeering conspiracy count, the jury found, for each defendant, that an object of the conspiracy involved murder, and that another object involved narcotics distribution. The jury found that it was reasonably foreseeable for Heyward and Amarizan, but not Romero, that the gang's narcotics distribution would involve at least 280 grams of crack cocaine and at least one kilogram of heroin. On the narcotics conspiracy count, the jury made identical findings. On the firearms count, the jury found that Heyward and Amarizan, but not Romero, were responsible for discharging, or aiding and abetting the discharge of, a firearm possessed or used during or in furtherance of the racketeering conspiracy. Dkt. 465 (jury verdict).

**B.    Heyward's Post-Trial Motion**

In letters to the defense dated February 17, 2017, the Government disclosed statements that two witnesses had made in post-trial interviews. (These interviews had apparently been conducted in preparation for the next scheduled trial in the 18 Park case.) These statements form the basis for Heyward's post-trial motions.

*The Mabry Statement*: First, in February 2017, during an interview with the Government, cooperating witness Mabry informed the Government for the first time that, several years earlier, he had fired a gun in the direction of the Betances Houses in the Bronx, New York. D. Mem at 3; G. Mem. at 24. At the fall 2016 trial, during cross-examination, Heyward's counsel had asked Mabry whether he had been involved in a shooting at the Betances Houses, and Mabry had testified that he had not. Tr. 1637–38.

3

*The Rodriguez Statement*: Second, in February 2017, Raheem Amarizan, who after his conviction at trial began cooperating with the Government, disclosed to the Government that an 18 Park member, co-defendant Jonathan Rodriguez, a/k/a "Bebo," had stated in jail while in Amarizan's presence that an aspect of the trial testimony of cooperating witness Keith Ruiz was incorrect. At Heyward's trial, Ruiz testified to the murder of Brandon Howard committed by Rodriguez in an apartment building. Ruiz testified that the gang members present for the murder were Rodriguez, Ruiz, Marquis Wright, and Heyward. After trial, however, Amarizan stated that, while in jail, Rodriguez had told Amarizan that only Rodriguez, Wright and Ruiz (*i.e.*, not Heyward) had been present at the time of the Brandon Howard murder. G. Mem. at 25; D. Mem. at 6.

On May 1, 2017, Heyward moved for a judgment of acquittal under Rule 29 and for a new trial under Rule 33, relying on the newly disclosed Mabry and Rodriguez Statements. Dkts. 746–48. The Government filed an opposition memorandum in response. Dkt. 780.

Pending resolution of these motions, the defendants have not been sentenced.

## II. Discussion

### A. The Rule 29(c) Motion

#### 1. Applicable Legal Principles

Under Rule 29(c), after a jury has returned a guilty verdict, a court may set aside the verdict and enter a judgment of acquittal. To do so, however, the district court—as under Rule 29(a), which governs such motions made during trial—must find the evidence on the count in question "insufficient to sustain a conviction." Fed. R. Crim. P. 29. A defendant challenging the sufficiency of the evidence underlying a conviction bears a "very heavy burden," *United States v. Brewer*, 36 F.3d 266, 268 (2d Cir. 1994) (quotation omitted), and "the standard of review is

exceedingly deferential," *United States v. Sheehan*, 838 F.3d 109, 119 (2d Cir. 2016) (quotation omitted). In evaluating a challenge to the sufficiency of the evidence, the Court must view the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Sheehan*, 838 F.3d at 119 (quotation omitted). Overall, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

2.  **Discussion**

Heyward's motion for a judgment of acquittal under Rule 29(c) is easily denied. At trial, Heyward similarly moved for a judgment of acquittal under Rule 29(a). The Court denied that motion, recognizing the abundant evidence supporting Heyward's guilt on all three counts. This evidence included testimony of four cooperating witnesses, who together recounted his involvement in selling drugs, supplying guns to other members of the gang, and participating in gang-related shootings. The evidence also included testimony from police officers who described chasing Heyward immediately after a shooting at the Patterson Houses on September 15, 2012, and shell casings recovered by the police from that shooting matched the gun that Heyward acknowledged (through a stipulation entered into evidence) that he possessed that day. Further, there was ballistics evidence that a gun that Heyward had supplied to Diquinn Lacend (a "Kel-Tec") had been fired on July 8, 2011, during a shootout with a rival gang member in which Raheem Amarizan was shot and wounded. Nothing in the Mabry Statement or the Rodriguez Statement calls into question the sufficiency of the evidence against Heyward.

5

Heyward's ensuing trial testimony, which broadly rejected the testimony of all four cooperating witnesses who had implicated him in the gang's activities, supplied additional grounds to support a guilty verdict. Among other denials, Heyward denied ever having heard the phrase "18 Park" to refer to a gang; instead, he testified that the phrase referred only to a playground. This testimony conflicted not only with that of the cooperating witnesses, but also with that of Andre Reed, the non-gang-affiliated friend from the same neighborhood whom Heyward himself called to testify. Heyward also supplied internally contradictory testimony about the facts underlying his gun possession on September 15, 2012. Heyward had pled guilty to gun possession in state court and stipulated to this possession at trial. But during his trial testimony, Heyward initially appeared to deny this possession, stating that he had pled guilty because he was the only person stopped that night and was found in the vicinity of the gun. Later, he changed course, and testified that, "It's my testimony that I did possess a gun." Tr. 1904; *see also* Tr. at 1899–1911. The jury was entitled to find various aspects of Heyward's testimony false and obfuscatory, and to infer from these evasions consciousness of guilt and thereby guilt. Neither the Mabry Statement nor the Rodriguez Statement does anything to rehabilitate this testimony.

Notably, despite raising a Rule 29(c) motion, Heyward nowhere attempts to explain why the trial evidence—whether viewed on its own or in light of the Government's post-trial disclosures—provided an insufficient basis on which to infer guilt. The Court's assessment remains that the evidence of Heyward's guilt was not only sufficient but abundant. The Court therefore denies Heyward's motion made under Rule 29(c).

B.  **The Rule 33 Motion**

   1.  **Applicable Legal Principles**

6

In relevant part, Rule 33 provides that upon a defendant's motion, a district court may vacate a judgment of conviction and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. However, "motions for new trials are disfavored in this Circuit," *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995), and are granted "sparingly and in only the most extraordinary circumstances," *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quotation omitted). In order for a court to grant such a motion, the court must find, in light of the overall facts and circumstances of the case, that there is "a real concern that an innocent person may have been convicted." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quotation omitted). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 1341; *see also United States v. Yannai*, 791 F.3d 226, 242 (2d Cir. 2015) ("A defendant's motion for a mistrial may be granted where something has occurred to interfere with the defendant's right to a fair trial."). A new trial should not be granted when the court is "satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict." *Ferguson*, 246 F.3d at 134.

Where, as here, a Rule 33 motion is based on a claim of a newly discovered evidence, a new trial may be granted "only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal." *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007) (quotation omitted). Because "one does not 'discover' evidence after trial that one was *aware of* prior to trial," evidence "that was known by the defendant prior to trial, but became newly available after trial" does not qualify as new evidence that may provide the basis for granting a Rule 33 motion. *Id.* at 89–90. "[W]here . . . a defendant knew or should have known[] that his codefendant could offer material testimony as to the defendant's role in

7

the charged crime, the defendant cannot claim that he 'discovered' that evidence only after trial." *Id.* at 91; *see also United States v. Forbes*, 790 F.3d 403, 408 (2d Cir. 2015) ("[W]e hold that evidence is excluded from the meaning of 'newly discovered' under Rule 33 where (1) the defendant was aware of the evidence before or during trial, *and* (2) there was a legal basis for the unavailability of the evidence at trial, such as the assertion of a valid privilege.").

Even if the proffered new evidence qualifies as being newly discovered, "[i]n the most common Rule 33(b) situation, in which the new evidence concerns the conduct of the defendant or the crime with which he is charged, the court is not to grant the new-trial motion unless the evidence would likely result in an acquittal." *United States v. Parse*, 789 F.3d 83, 110 (2d Cir. 2015). That principle applies to circumstances where the new evidence is of a trial witness's perjury, as the Second Circuit has "frequently acknowledged that, even where newly discovered evidence indicates perjury," a Rule 33 motion "should be granted only with great caution and in the most extraordinary circumstances." *United States v. Stewart*, 433 F.3d 273, 296 (2d Cir. 2006) (quotation omitted). In such cases, the "threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury." *Id.* at 297 (quotation omitted). Even if a witness has committed perjury, "if the prosecution was not aware of the perjury [at the time of trial], a defendant can obtain a new trial only where the false testimony leads to a 'firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'" *Id.* (quoting *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991)). "If instead the prosecution knew or should have known about the perjury, then the conviction will be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Torres*, 128 F.3d 38, 49 (2d Cir. 1997) (quotation omitted).

8

Finally, the standard for a new trial is especially hard to meet where the newly discovered evidence constitutes additional impeachment material. "Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that . . . the evidence is not merely cumulative or impeaching; and . . . the evidence would likely result in an acquittal." *Forbes*, 790 F.3d at 406–07 (quotation omitted); *see also, e.g.*, *United States v. Reyes*, 49 F.3d 63, 68 (2d Cir. 1995) ("New evidence that is merely impeaching will not ordinarily justify a new trial."); *United States v. Parkes*, 497 F.3d 220, 233 (2d Cir. 2007) ("New impeachment evidence is *not* material, and thus a new trial is *not* required when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.") (quotation and alteration omitted).

2. **Discussion**

Measured against these standards, the Mabry Statement does not supply a basis to grant Heyward a new trial under Rule 33. Significantly, the Mabry Statement does not speak to Heyward's guilt—on its face, it does not concern Heyward at all. Instead, taken as true, it would serve as additional impeachment material as to Mabry. The statement admits another criminal act on Mabry's part: that Mabry had once fired a shot at members of a rival gang in the vicinity of the Betances Houses. And it thereby revealed that Mabry's contrary trial testimony denying involvement in a shooting at the Betances Houses had been false.

Ordinarily, however, additional "new impeachment evidence is *not* material" so as to require a new trial. *Parkes*, 497 F.3d at 233 (alteration omitted). That premise applies here. Mabry's trial testimony itself revealed ample prior criminal acts on his part, including other acts committed in conjunction with the 18 Park gang, such that the revelation of the additional act of violence would have been cumulative to the existing impeachment evidence in the record. *See*

9

*id.* ("[A] new trial is *not* required when the [new] impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable."); *see also Forbes*, 790 F.3d at 406–07 ("Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that . . . the evidence is not merely cumulative or impeaching . . . ."). Mabry admitted steering crack sales for the gang; selling marijuana for the gang; stashing guns in 18 Park's territory with fellow gang members; and being present for and/or facilitating several shootings that fellow gang members committed, including assisting 18 Park member Jonathan Harris in a shooting on "Spanish Block," a street in the heart of the gang's territory.

To be sure, Mabry's post-trial statement revealed his role as shooter on one occasion, a species of criminal act not revealed by the other trial evidence. And the impeachment value of Mabry's post-trial statement was enhanced because it served not only to disclose an additional criminal act but also to reveal as false an aspect of his trial testimony.

Nonetheless, considering the trial record as a whole, the Court—far from having a "firm belief" that but for Mabry's false testimony, Heyward would not have been convicted, *Stewart*, 433 F.3d at 296–97—has a firm belief that the jury's verdict would have been exactly the same. Even had the jury discounted Mabry's testimony altogether, the other evidence of Heyward's involvement in the 18 Park gang, in the manners charged, was overwhelming. All three other cooperating witnesses testified to Heyward's involvement in the gang's narcotics dealing; Lacend and Ruiz testified to Heyward's involvement in the gang's firearms activities; and the evidence of Heyward's use of a firearm to further the gang's agenda was compelling: Heyward in fact stipulated to his gun possession on September 15, 2012, and the evidence (all independent of Mabry) tied the shooting that night to the gang. Moreover, the jury was aware from other trial

10

evidence that Mabry's testimony required close scrutiny, as the Court in its final instructions directed the jury to give it. The examinations of Mabry at trial revealed a prior false statement he had made to the police at the time of his arrest (Tr. 1614–19); a false statement he had made to federal law enforcement agents in connection with his arrest (*id.* at 1619–23); and a prior false statement he had made under oath in Bronx Supreme Court (*id.* at 1623–28). Cross-examination of Mabry similarly yielded internally contradictory or arguably contradictory testimony as to whether he was a "member" of 18 Park (*id.* at 1648–49). And defense counsel drew the jury's attention to these problematic aspects of Mabry's testimony. Under these circumstances, there is no reasonable likelihood that Mabry's false testimony about whether he had shot a gun at the Betances Houses would have affected the jury's determination as to Heyward.

In a final bid to overturn his conviction based on the Mabry Statement, Heyward posits that, at the time Mabry testified about his lack of involvement in a shooting at the Betances Houses, the Government knew that testimony was false. Even if that were so, a new trial would then be warranted only if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Torres*, 128 F.3d at 49. But Heyward has not offered any factual support for that claim. Heyward has not, for example, pointed to any part of Mabry's voluminous 3500 material that admitted or indicated his participation in that shooting.[3] And that Heyward's counsel knew to examine Mabry about the shooting does not, without more, reveal that the Government also knew of it at trial. Defense counsel could have learned of this incident in various ways, including from Heyward or from counsel for other indicted defendants.

---

[3] In contrast, twice at trial, when cooperating witnesses contradicted prior statements reflected in their 3500 material, counsel for Amarizan sought and obtained stipulations as to the prior inconsistent statements. *See* Defense Exhibit RA-1.

11

Under the applicable governing standards, the Rodriguez Statement also does not support vacating Heyward's conviction. First, the statement itself does not qualify as "newly discovered evidence." Heyward was aware before trial—from Ruiz's 3500 material—and at trial that Ruiz would testify both that Heyward was among the 18 Park gang members present with Rodriguez at Rodriguez's apartment on September 28, 2008, immediately before the murder of Brandon Howard, and that Heyward was among those who accompanied Rodriguez to the party at the building where Rodriguez shot and killed Brandon Howard. Heyward therefore knew before and at trial that Rodriguez was among those in a position to offer material testimony as to Heyward's role in the charged crime, and that Rodriguez was in possession to confirm—or refute—Heyward's defense that he was not present. As such, Heyward cannot claim, as to Rodriguez's harboring relevant evidence, "that he 'discovered' that evidence only after trial." *Owen*, 500 F.3d at 87–91.

To be sure, Rodriguez, as a co-defendant then scheduled to go to trial, presumably would have invoked his Fifth Amendment privilege against self-incrimination had Heyward called him to testify. But the unavailability of evidence due to the assertion (or contemplated assertion) of a legal privilege is not grounds for a Rule 33 motion. *See Forbes*, 790 F.3d at 408–09 (denying new trial where evidence was unavailable because witness invoked Fifth Amendment privilege, as "evidence is excluded from the meaning of 'newly discovered' under Rule 33 where (1) the defendant was aware of the evidence before trial or during trial, *and* (2) there was a *legal* basis for the unavailability of the evidence at trial, such as the assertion of a valid privilege"). Although the avenues to secure such testimony are often problematic, there are means by which a defendant facing this situation can at least seek to pursue evidence. *Owen*, 500 F.3d at 91–92 (noting potential remedies for circumstance where co-defendant's expected invocation of

12

privilege prevented co-defendant from giving potentially exculpatory testimony, including seeking to sever the trial or limited immunization of the witness co-defendant). Heyward, however, did not pursue severance and deferral of his trial pending the outcome of Rodriguez's trial; nor, on the record before the Court, did he pursue Rodriguez's immunization.

In any event, even if the statement made by Rodriguez to Heyward's co-defendant Amarizan did constitute newly discovered evidence, it would not provide Heyward with a basis for a new trial. The statement itself, if testified to by Amarizan, is inadmissible hearsay: Heyward would be offering the proposition asserted by Rodriguez—that Heyward was not at the scene of the Howard murder—for the truth of the matter asserted. *See* Fed. R. Evid. 801–02. And Heyward has not identified any hearsay exception that would permit this statement by an unavailable declarant (Rodriguez) to be received for its truth: While a statement by Rodriguez that incriminated himself in the murder would likely qualify as a statement against his penal interest, *see* Fed. R. Evid. 804(b)(3), a statement by Rodriguez listing the persons present would not, *see Williamson v. United States*, 512 U.S. 594, 600–01 (1994) (statements collateral to self-inculpatory statements are not admissible). Heyward's bid for a new trial based on the Rodriguez Statement thus falters for the failure to identify a means by which that statement could be received in evidence at trial.

In any event, even if the statement were received, none of the three counts with which Heyward was charged (and convicted) required proof of his presence at, or participation in, a murder generally or that murder specifically. For the reasons stated earlier, the independent evidence of Heyward's participation in the racketeering conspiracy, in the narcotics conspiracy, and in the use of a firearm to further the former, was abundant. The Brandon Howard murder, while the most violent of the gang's acts as recounted at trial, was just one of numerous acts of

violence and narcotics dealing to which the evidence tied Heyward. Therefore, even assuming the jury—on the strength of the Rodriguez statement as related by Amarizan—discredited Ruiz's testimony that Heyward had been present for the Howard murder, the Court possesses no concern that the verdict would have been different, let alone "a real concern that an innocent person may have been convicted," *Aguiar*, 737 F.3d at 264, or any worry that letting the guilty verdict stand would constitute a "manifest injustice," *Ferguson*, 246 F.3d at 134. The Court therefore denies Heyward's motion for a new trial based on the Rodriguez Statement.

A separate question is presented by the jury's finding, made in connection with the racketeering conspiracy count, that an object of the conspiracy was murder. Given the evidence entered at trial, it is likely, although not certain, that the jury's basis for that particular finding was, as to Heyward, the murder of Brandon Howard. But, for the reasons discussed above, the Rodriguez Statement, even had it been made to Amarizan prior to trial and made known to Heyward's counsel, almost certainly would not have been admissible at trial. There is therefore no basis to disturb the jury's finding. And it is far from certain that the jury would not still have credited Ruiz on Heyward's presence at the Brandon Howard murder had both Ruiz's and Rodriguez's competing statements been presented to the jury.

The Court has nevertheless considered the potential effect on Heyward's sentence of the jury's finding that the conspiracy as joined by Heyward had murder as an object. The effect of that finding is not to impose a minimum sentence, but to increase the maximum sentence that may be imposed on the racketeering count from 20 years to life imprisonment. While the Court will not prejudge the sentence to be imposed on Heyward, it is likely that the sentence that the Court will ultimately determine to be reasonable under 18 U.S.C. § 3553(a) can be effectuated without any need to utilize the enhanced statutory maximum on the racketeering count that the

14

finding of the murder object provides. In this respect, too, there is no injustice, let alone a manifest injustice, to Heyward by allowing the murder-object finding to stand. The Court invites counsel, in their sentencing submissions, to comment further on this matter.

## CONCLUSION

For the foregoing reasons, the Court denies defendant Heyward's motion for a judgment of acquittal and for a new trial. The Court will contact counsel shortly to confirm or set a new sentencing date.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 746.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 21, 2017
New York, New York